# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

UMAYMAH MOHAMMAD,

    *Plaintiff*,

  v.

EMORY UNIVERSITY;
EMORY UNIVERSITY BOARD OF
TRUSTEES; and
JOHN WILLIAM ELEY,

    *Defendants.*

CIVIL ACTION NO.:

_____

**EMERGENCY MOTION FOR
TEMPORARY RESTRAINING
ORDER AND/OR PRELIMINARY
INJUNCTION**

EMERGENCY HEARING REQUESTED

**TO ALL DEFENDANTS AND THEIR COUNSEL:**

**PLEASE TAKE NOTICE** that Plaintiff Umaymah Mohammad moves this Court pursuant to Federal Rule of Civil Procedure 65, Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d *et seq*.) (1964), and Georgia law for an emergency temporary restraining order and preliminary injunction enjoining Defendants, their officers, agents, employees, and all persons acting in concert with them from:

1. Pursuing, initiating, or continuing any disciplinary actions, investigations, or sanctions against Plaintiff based upon actions related to speech that Emory University's Committee for Open Expression deemed protected under university policy;

2. Retaliating against Plaintiff for filing internal bias complaints, engaging in protected advocacy, or initiating this lawsuit; and

3. Enforcing any suspension, expulsion, or other adverse academic action already entered or threatened against Plaintiff.

This motion is supported by the Verified Complaint (ECF No. 1), the accompanying Memorandum of Law, Umaymah Mohammad's Declaration (Aug. 8, 2025) ("Mohammad Decl.," Ex. 1), the Final Report from Emory's Committee for Open Expression ("CFOE Rep.," Ex. 2), Emory's Code of Conduct and Open Expression Policy ("COC Policy," Ex. 3), related exhibits, and the complete record in this case.

Pursuant to Local Rule 7.2(B), Plaintiff requests an immediate hearing on this emergency motion as the motion and accompanying declaration outlined in detail the necessity for this expedited procedure.

Undersigned counsel notified Emory University's counsel by email on August 8, 2025, as required by Fed. R. Civ. P. 65(b)(1). Urgent injunctive relief is essential to prevent lasting harm to the Plaintiff's medical training, professional reputation, and civil rights, given the immediate and irrevocable damage already suffered.

## INTRODUCTION

Plaintiff Umaymah Mohammad, a Palestinian-American MD/PhD candidate at Emory University School of Medicine, seeks emergency injunctive relief to halt discriminatory disciplinary proceedings that threaten her imminent expulsion after 15 years of medical training.

Ms. Mohammad enrolled at Emory after Dean Ira Schwartz assured her that her Palestinian identity "would not be a problem." (Mohammad Decl. ¶ 5)[1]. In 2024, after she criticized Emory's discriminatory treatment of Palestinian students on a

---

[1] All citations refer to the Verified Complaint (ECF No. 1), the Declaration of Umaymah Mohammad (Aug. 8, 2025) (Ex. 1), the Committee for Open Expression Final Report (Ex. 2), and Emory's Code of Conduct and Open Expression Policy (Ex. 3).

student listserv and Democracy *Now!*, she faced doxxing, death threats, and systematic university retaliation. (Mohammad Decl. ¶¶ 8–14).

Despite Emory's Committee ruling that her speech was protected and dismissing charges, (Mohammad Decl. ¶ 20), Emory continued a biased disciplinary process. The university let the administrator, influenced by Ms. Mohammad's complaints, oversee her case, manipulated deadlines via ex parte communications, and imposed a twelve-month suspension despite her expert committee's directive.

Ms. Mohammad, facing a second disciplinary proceeding initiated on July 18, 2025, faces imminent expulsion, more severe than suspension. This systematic targeting violates Title VI's ban on discrimination and retaliation, breaches Emory's contract, and denies her procedural fairness.

Without immediate relief, fifteen years of medical training will be lost, and Emory's civil rights violations will continue. Ms. Mohammad respectfully urges this Court to grant emergency injunctive relief to prevent irreparable harm.

## STATEMENT OF FACTS

### A. Guarantee of Support for Palestinian Advocacy

Ms. Mohammad was born to a Palestinian mother who fled during the 1967 displacement and contracted polio as a refugee. This experience shaped her understanding that health issues stem from "poverty, colonization, racial capitalism, and apartheid." (Mohammad Decl. ¶¶ 3–4). During her Emory interview, she directly

asked whether her Palestinian identity and advocacy would create problems. Dean Ira Schwartz assured her it "would not." (Mohammad Decl. ¶ 5).

### B. A Pattern of Institutional Bias

After October 7, 2023, Emory sent three emails mourning Israeli casualties and condemning antisemitism, but ignored Palestinian suffering and Islamophobia. (Mohammad Decl. ¶ 6). When the School organized an event supporting bombing Gaza hospitals, over 100 students petitioned for an anti-bias response—Emory stayed silent. (Mohammad Decl. ¶ 7). This discriminatory treatment led CAIR-Georgia and Palestine Legal to file a Title VI complaint. On January 17, 2025, the Office for Civil Rights found that Emory violated Title VI and entered a binding Resolution Agreement. (Verified Compl. ¶ 20).

### C. Protected Advocacy Met with Retaliation

In January 2024, Ms. Mohammad criticized "Emory's complicity in genocide" on a student listserv. Despite support from over 200 classmates, she was doxed and received death threats while Emory offered no protection. (Verified Compl. ¶¶ 22–23; Mohammad Decl. ¶¶ 8–10). On April 26, 2024, she appeared on *Democracy Now!* to address "Emory's racist treatment of Palestinian students," referencing a

faculty member's previously self-published IDF service. (Verified Compl. ¶¶ 26–28; Mohammad Decl. ¶ 13).

### D. Emory's Senate Committee Affirms Speech Protection

Under Emory's Open Expression Policy, the Senate-appointed Committee for Open Expression independently examined Ms. Mohammad's case. On September 23, 2024, CFOE unanimously concluded that her remarks on *Democracy Now!* were "core political speech" protected by university policy and recommended the immediate dismissal of all disciplinary measures. (CFOE Rep.; Mohammad Decl. ¶ 20).

### E. An Unrelenting Campaign of Retaliation

Defying CFOE's recommendation, Defendants escalated retaliation under Dean John William Eley, who faced Ms. Mohammad's bias complaints. (Verified Compl. ¶¶ 72–75). On June 18, 2024 (Eid al-Adha), they issued eight vague violations with less than 24 hours' notice, changed charges, manipulated deadlines, and disregarded CFOE's non-final findings.

During the November 12, 2024, hearing, she was labeled 'untruthful' despite having supporting evidence. Later, in late November 2024, the Conduct Committee released its findings, recommending a one-year suspension with two years' probation, despite explicitly ignoring the CFOE's September 2024 directive to dismiss all charges. On July 18, 2025, they started a new disciplinary process with

charges that seem similar to the original allegations, filed by unidentified complainants and lacking any new misconduct. (Verified Compl. ¶¶ 43–84; Mohammad Decl. ¶¶ 15–23).

### F. Imminent and Irreparable Harm

Ms. Mohammad's suspension halts her rotations, risking graduation and residency. False accusations of unprofessionalism could permanently damage her reputation in the close medical community. Without urgent intervention, she risks losing fifteen years of medical training and her dedication to marginalized communities.

This systematic retaliation violates Title VI, breaches Emory's contractual obligations under Georgia law, and denies Ms. Mohammad fundamental due process protections.

## LEGAL STANDARD FOR INJUNCTIVE RELIEF

To obtain a preliminary injunction, Plaintiff must show: (1) likelihood of success on the merits; (2) irreparable injury without relief; (3) that the balance of equities favors her; and (4) that an injunction serves the public interest. *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008). The standard for a temporary

restraining order is identical. *Gissendaner v. Comm'r, Ga. Dep't of Corr.*, 779 F.3d 1275, 1280 (11th Cir. 2015).

The Eleventh Circuit considers the likelihood of success on the merits "generally the most important" preliminary injunction factor, *Speech First, Inc. v. Cartwright,* 32 F.4th 1110, 1124 (11th Cir. 2022), particularly when students seek interim relief from university disciplinary proceedings.

Plaintiff satisfies all four factors and requests emergency relief. She is likely to succeed on her claims, faces irreparable harm, and the equities and public interest favor her.

## ARGUMENT

### 1.  PLAINTIFF FACES IRREPARABLE HARM ABSENT INJUNCTIVE RELIEF

Ms. Mohammad faces catastrophic and irreversible injuries that no monetary award can remedy.

#### A. Educational and Career Destruction

Ms. Mohammad faces urgent and growing harm that could destroy her medical career entirely. She is currently suspended and has been clearly warned that any further disciplinary violations will lead to harsher sanctions. (Mohammad Decl. ¶ 23). According to Emory's Code of Conduct, the only penalty more severe than

suspension is expulsion, making this second proceeding a direct threat to her 15 years of medical training and investment.

The deprivation of educational opportunity inflicts, per se, irreparable harm. In *Goss v. Lopez*, the Supreme Court explained that misconduct charges "if sustained and recorded, could seriously damage the student's standing with their fellow pupils and their teachers as well as interfere with later opportunities for higher education and employment." 419 U.S. 565, 575 (1975). The Northern District of Georgia recently confirmed that "[t]he loss of timely academic progress alone is sufficient to establish irreparable harm" and that such harm "could not be sufficiently compensated with monetary damages." *Jane Doe 1 v. Bondi*, No. 1:25-CV-01998-VMC, 2025 WL 1188469, at *4 (N.D. Ga. Apr. 18, 2025); *see also Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc) (irreparable injury presumed where constitutional rights are threatened).

Ms. Mohammad's fifteen years of medical training, already disrupted by a one-year suspension that is "permanently on [her] academic record" and "making it extremely difficult to get into residency," (Mohammad Decl. ¶ 19), constitute an irreplaceable investment. Expulsion would foreclose clinical rotations, bar transfers to other programs, and inflict lifelong reputational stigma that no monetary award can remedy.

## B. Irreparable Harm from Civil Rights Violations and Contractual Breaches.

Emory's retaliation against Ms. Mohammad's protected Title VI activity causes ongoing harm that money cannot remedy. Title IX "encompasses claims of retaliation" and "authorizes a private suit for injunctive relief against federally funded institutions that intentionally discriminate." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 171-80 (2005). Disciplining Ms. Mohammad for bias complaints while overlooking similar behavior by others discourages Palestinians from reporting discrimination, hampering access to relief that cannot be easily rectified.

Georgia contract law confirms irreparable harm. Student handbooks form enforceable contracts with an implied covenant of good faith and fair dealing. *Morehouse Coll. v. McGaha*, 277 Ga. App. 529, 531-32, 627 S.E.2d 39, 41-42 (2005). Universities must achieve "substantial compliance"—material deviations breach the contract. *Kuritzky v. Emory Univ.*, 294 Ga. App. 370, 371, 669 S.E.2d 179, 181 (Ga. Ct. App. 2008).

Emory's actions—changing charges without notice, ignoring exculpatory material, and choosing a conflicted decision-maker—violate substantial compliance. Because equity intervenes where "no adequate remedy is provided at law," O.C.G.A. § 9-5-1, injunctive relief is appropriate to prevent irreversible harms: missed rotations, closed residency cycles, blocked transfers, and lasting disciplinary stigma.

10

Neither damages nor post-hoc rulings can restore Ms. Mohammad's Title VI protections or fifteen-year educational investment. Immediate injunctive relief is necessary.

## 2.  PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS

Plaintiff demonstrates substantial likelihood of success on multiple claims backed by Emory's own expert findings that render the university's position legally indefensible.

### A. Substantial Likelihood of Success on Title VI Claims

### 1. Intentional Discrimination Based on National Origin

Ms. Mohammad satisfies the Eleventh Circuit's "convincing mosaic" standard for discriminatory intent. *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). Emory's bias is evident in its selective enforcement: celebrating Dr. Winer's public praise of his IDF service while disciplining Ms. Mohammad for criticizing that same conduct. (Mohammad Decl. ¶ 13). This disparate treatment based on viewpoint creates sufficient circumstantial evidence for a jury to infer discrimination.

The timing and procedural irregularities support this conclusion. Emory delayed fifty-three days after her protected listserv post before filing charges, then announced them on Eid al-Adha with less than twenty-four hours' notice—conditions that the Eleventh Circuit views as evidence of intent. *See Farley v.*

*Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999) (suspicious timing of adverse action supports inference of discriminatory motive); (Mohammad Decl. ¶ 14).

Furthermore, Emory consistently altered charges midway, provided deadline extensions to faculty complainants but not to Ms. Mohammad, and disregarded the Committee for Open Expression's unanimous decision that her speech was protected. (Mohammad Decl. ¶ 15). Collectively, these actions form a clear pattern—a "convincing mosaic"—of deliberate discrimination based on national origin under Title VI.

### 2. Retaliation for Protected Opposition Activity

Title VI prohibits retaliation against students opposing discrimination. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173-74 (2005). Ms. Mohammad satisfies all essential elements with compelling evidence.

She engaged in protected activity by filing bias complaints and criticizing discrimination publicly on *Democracy Now*! *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 69-70 (2006); (Mohammad Decl. ¶ 14). Emory responded with escalating adverse actions: disciplinary charges, procedural violations, and suspension—deterrents to students asserting civil rights. *Burlington*, 548 U.S. at 68.

The causal link is evident: a 53-day gap between her protected activities and disciplinary charges, along with the Committee for Open Expression's ruling that her

speech deserved protection, confirms a direct retaliatory cause-and-effect. *Loudermilk v. Best Pallet Co*., 636 F.3d 312, 315 (7th Cir. 2011).

### 3. Emory's Own Committee Confirms Discrimination

On September 23, 2024, Emory's Committee for Open Expression unanimously found Ms. Mohammad's Democracy Now! remarks were protected political speech and recommended dismissing all charges. (Mohammad Decl. ¶ 21). Emory's refusal to follow that decision—under a policy claiming to be "paramount"—constitutes a procedural departure probative of pretext. *See Hurlbert v. St. Mary's Health Care Sys., Inc*., 439 F.3d 1286, 1299 (11th Cir. 2006). Unlike *Tsavaris v. Savannah Law Sch., LLC*, 847 F. App'x 634, 641 (11th Cir. 2021) (per curiam), where the handbook expressly authorized disregarding committee recommendations, Emory's policy contains no such carveout, making its departure probative of discriminatory enforcement.

### B. Substantial Likelihood of Success on Breach of Contract Under Georgia Law

Under Georgia law, private universities' relationships with students are contractual, with handbooks creating binding agreements including an implied covenant of good faith and fair dealing. *Morehouse Coll*., 277 Ga. App. at 531–32, 627 S.E.2d at 42; *Kuritzky*, 294 Ga. App. at 371; *Hunting Aircraft, Inc. v. Peachtree City Airport Auth*., 281 Ga. App. 450, 452, 636 S.E.2d 139, 142 (Ga. Ct. App. 2006)

(recognizing implied covenant of good faith and fair dealing in Georgia contractual relationships).

Emory materially breached by violating its Open Expression Policy, which declared itself "paramount to other Emory policies that may conflict, except those grounded expressly in local, state, or national law." (Ex. 3 at 3.)[2] Despite the Committee's unanimous finding that Ms. Mohammad's speech was protected and recommendation to dismiss all charges (Mohammad Decl. ¶ 20), Emory continued disciplinary proceedings in direct violation of this hierarchy.

Emory further breached through bad-faith enforcement: changing charges without notice (Mohammad Decl. ¶¶ 15-16), providing insufficient notice (Verified Compl. ¶ 36), and unevenly enforcing deadlines—strictly against Ms. Mohammad while extending them for faculty complainants (Verified Compl. ¶¶ 47-50). This denied her a fair hearing and violated the contract.

## C. Substantial Likelihood of Success on Denial of Fundamental Procedural Fairness under Georgia and Federal Law

Beyond breaches of contract, Emory violated procedural fairness principles mandated by Georgia equity law. Private universities with quasi-judicial powers

---

[2] Last revised September 21, 2018. Although Emory's March 20, 2025 revision removed this language; the 2018 version was the operative policy during the events in question.

must ensure impartial decision-making and adhere to established procedures. *Young*, 980 F.3d at 822; cf. *Goss*, 419 U.S. at 579.

Emory denied Ms. Mohammad a fair process through two violations. First, Dean Eley retained disciplinary authority despite being the subject of three formal bias complaints filed by Ms. Mohammad (Mohammad Decl. ¶ 21). This structural conflict violated the principle that "a fair trial in a fair tribunal is a basic requirement of due process." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975).

Second, Emory secretly coordinated with faculty complainants to extend their deadlines while strictly enforcing rules against Ms. Mohammad (Verified Compl. ¶¶ 47-50). This unequal treatment undermined fairness and violated the duty of impartiality.

These violations demonstrate likely success on breach-of-contract and due process claims. Emory's second disciplinary action threatens Ms. Mohammad with further sanctions, causing irreversible harm.

### D. Immediate Relief Required

These violations suggest a substantial likelihood of success on Title VI discrimination, retaliation, breach-of-contract, and due process claims. Since Emory began a second disciplinary process using the same flawed method (Mohammad Decl. ¶ 23), Plaintiff faces imminent sanctions that could cause irreparable harm to her educational and professional future.

Monetary damages cannot remedy the loss of irreplaceable educational opportunities, restore violated civil rights and procedural protections, or reputational harm. Only immediate injunctive relief can stop Emory's ongoing discrimination, retaliation, and procedural breaches, and protect Plaintiff's rights until complete resolution.

### 3.  THE BALANCE OF EQUITIES AND PUBLIC INTEREST FAVORS INJUNCTIVE RELIEF

**A. Balance of Equities**

The equities favor Ms. Mohammad, who risks expulsion and career ruin for speech Emory's committee unanimously deemed protected. (Mohammad Decl. ¶ 20). After fifteen years of medical training, she faces irreparable damage: permanent academic records, disrupted rotations, delayed licensure, and destroyed career prospects.

Emory faces no tangible harm from pausing proceedings that violate federal law and its policies—only a delay in sanctions its expert committee deemed unjustified. *Winter*, 555 U.S. at 24. Courts do not balance equities in favor of continuing civil rights violations.

**B. Public Interest**

Granting relief serves compelling public interests. The Department of Education's Resolution Agreement found Title VI violations and required Emory to

cease discriminatory practices. Allowing retaliation to continue would undercut federal civil-rights enforcement. *See Alexander v. Sandoval*, 532 U.S. 275, 279-82 (2001) (recognizing a private right of action under Title VI for intentional discrimination); *Elston v. Talladega Cnty. Bd. of Educ.*, 997 F.2d 1394, 1407-08 (11th Cir. 1993) (affirming injunctive relief to remedy Title VI race discrimination in schools).

Universities must honor their governance structures; procedural departures evidence pretext. *See Hurlbert*, 439 F.3d at 1299; *Bass v. Bd. of Cnty. Comm'rs,* 256 F.3d 1095, 1108 (11th Cir. 2001); cf. *Tsavaris*, 847 F. App'x at 641. Emory's Open Expression Policy declares itself "paramount" over conflicting rules. Its refusal to follow the Committee's unanimous decision undermines procedural integrity and renders protections illusory.

By appointing Dean Eley—who handles Ms. Mohammad's bias complaints— to discipline her, Emory creates a conflict that violates due process. *Withrow*, 421 U.S. at 47.

## CONCLUSION

Emory's actions breach Title VI, Georgia contract law, procedural due process, and its internal policies. Despite the Committee for Open Expression's unanimous finding that Ms. Mohammad's speech was protected, Emory continues proceedings aimed at ending her medical career. (Verified Compl. ¶¶ 83–84; Mohammad Decl. ¶¶ 23).

Ms. Mohammad satisfies all *Winter* factors for injunctive relief. She faces irreparable harm to her education and career that cannot be compensated financially. The balance of equities and public interest supports protecting her rights and holding Emory accountable rather than allowing ongoing violations. Every day of delay causes lasting harm as Emory ignores its committee and safeguards.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court:

**A.** Issue an emergency temporary restraining order and preliminary injunction enjoining Defendants from:

1. Pursuing disciplinary proceedings against Plaintiff based on protected expression;

2. Retaliating against Plaintiff for filing bias complaints or initiating this lawsuit;

3. Enforcing any suspension, expulsion, or adverse academic action against Plaintiff;

**B.** Order immediate affirmative relief:

1. Immediate lifting of Plaintiff's suspension and reinstatement to full academic standing;

2. Prohibition on new disciplinary proceedings for the same conduct;

3. Expungement of disciplinary records related to Plaintiff's protected expression;

**C.** Schedule an expedited hearing for emergency relief consideration; and

**D.** Grant such other and further relief as this Court deems just and proper.

Respectfully submitted this 8th day of August 2025.

/s/ Keon N. Grant
Keon Nicholas Grant
Georgia Bar No. 946800
Aaron Edward Butler
Georgia Bar No. 722335
**Council on American-Islamic Relations – Georgia**
P.O. Box 956263
Duluth, GA 30095
Telephone: 470.604.7877
kgrant@cair.com
abutler@cair.com

/s/ Jonathan Wallace
Jonathan Wallace
*Pro Hac Vice Forthcoming*
New York Bar No. 1733757
P.O. Box #728
Amagansett, NY 11930
Telephone: 917.359.6234
jonathan.wallace80@gmail.com

*Counsel for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UMAYMAH MOHAMMAD,

        *Plaintiff*,

v.

EMORY UNIVERSITY;
EMORY UNIVERSITY BOARD OF
TRUSTEES; and
JOHN WILLIAM ELEY,

        *Defendants*.

CIVIL ACTION NO.:

_____

**[PROPOSED] TEMPORARY
RESTRAINING ORDER AND
ORDER TO SHOW CAUSE RE:
PRELIMINARY INJUNCTION**

## I.  FINDINGS

Upon reviewing Plaintiff's Emergency Motion for a Temporary Restraining Order
and Preliminary Injunction (ECF No. 1), the Verified Complaint, the Declaration of
Umaymah Mohammad, the Final Report of Emory's Committee for Open
Expression, Emory's Code of Conduct and Open Expression Policy, and the entire
record, the Court finds that:

a. Plaintiff has a **substantial likelihood of success on the merits** of her claims under Title VI, Georgia contract law, and fundamental due-process principles.

b. Absent immediate relief, Plaintiff faces **immediate and irreparable harm**—loss of educational opportunity, damage to her professional reputation, and deprivation of her contractual and civil rights—that monetary damages cannot remedy.

c. The **balance of equities weighs heavily in Plaintiff's favor**. Defendants suffer no cognizable hardship from maintaining the status quo, whereas Plaintiff stands to lose fifteen years of medical training.

d. An injunction **serves the public interest** by enforcing Title VI's anti-retaliation mandate and upholding fair-process safeguards.

e. Pursuant to Federal Rule of Civil Procedure 65(c), **no security bond is required**, as Defendants have not shown any threatened harm or potential costs and damages that could result from the relief granted herein.

## II.    TEMPORARY RESTRAINING ORDER

**IT IS HEREBY ORDERED** that, pending further order of this Court, Defendants, their officers, agents, employees, and all persons acting in concert with them, are **RESTRAINED AND ENJOINED** from:

1. Pursuing, initiating, or continuing any disciplinary actions, investigations, or sanctions against Plaintiff based on speech deemed protected under Emory University's Open Expression Policy.

2. Retaliating against Plaintiff for filing internal bias complaints, engaging in protected advocacy, or initiating this lawsuit.

3. Enforcing any suspension, expulsion, or other adverse academic action already imposed or threatened against Plaintiff.

## III.    AFFIRMATIVE RELIEF

Defendants shall, no later than one business day after entry of this Order:

a. Immediately reinstate Plaintiff to full academic and clinical standing.

b. Refrain from commencing any new disciplinary proceedings arising from the same protected conduct.

c. Expunge from Plaintiff's academic record all references to the suspended or threatened disciplinary actions.

## IV.    ORDER TO SHOW CAUSE HEARING

Pursuant to Federal Rule of Civil Procedure 65(b)(2), Defendants shall appear and show cause why a preliminary injunction should not issue. A hearing is **SCHEDULED** for _____, 2025, at: ___.m., in Courtroom ___, Richard B.

Russell Federal Building and U.S. Courthouse, 75 Ted Turner Drive, SW, Atlanta, Georgia 30303.

## V.    SERVICE

Plaintiff is directed to serve this Order upon Defendants and their counsel immediately.

## VI.    DURATION

This Temporary Restraining Order shall remain in effect until the earlier of (a) entry of a preliminary injunction or (b) further order of this Court.

**SO ORDERED**, this ____ day of _____, 2025.

HON. _____

UNITED STATES DISTRICT JUDGE

Copies to: Counsel of record via CM/ECF.